IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SPRATLIN OUTDOOR MEDIA, INC.

      Plaintiff,

v.

CITY OF DOUGLASVILLE and its
Mayor, MICKEY THOMPSON and its
City Council, CHARLES J. BANKS,
JAY MICHAEL CARTER, BETH
JOHNSON, ROY E. MIMS, HENRY
MITCHELL, III, WINTON H.
MORELAND, and ROCHELLE
ROBINSON, in their official
capacity

      Defendants.

CIVIL ACTION NO.

1:04-CV-3444-JEC

FILED

MAR 27 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

## O R D E R   &   O P I N I O N

This case is presently before the Court on Plaintiff's Motion for Partial Summary Judgment [43]; Douglasville Defendants' Motion for Summary Judgment [48]; Motion to Strike Attachments 5 and 7 of Document Number 48 and Documents 49 and 50 [52]; Plaintiff's Motion to Strike [56]; Title Correction and Supplemental Filing [58] AND Motion to Strike Affidavit of Robert D. Spratlin and Affidavit of Ryan M. Pott [64]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion for Partial Summary Judgment [43]

should be **DENIED**; Douglasville Defendants' Motion for Summary Judgment [48] should be **GRANTED**; Motion to Strike Attachments 5 and 7 of Document Number 48 and Documents 49 and 50 [52] should be **GRANTED**; Plaintiff's Motion to Strike [56] should be **GRANTED in part and DENIED in part**; Title Correction and Supplemental Filing [58] should be **GRANTED**; AND Motion to Strike Affidavit of Robert D. Spratlin and Affidavit of Ryan M. Pott [64] should be **GRANTED in part and DENIED in part**.

**BACKGROUND**

**I.   Factual Background**

On October 4, 2004, plaintiff in this action, Spratlin Outdoor Media, Inc. ("Spratlin"), submitted to defendant in this action, the City of Douglasville, Georgia ("the City"), an application for two zoning variances for the erection of a commercial billboard on approximately 57.83 acres of property fronting Interstate 20. (Defs.' Statement of Material Facts Not in Dispute ("DSMF") [48] at ¶¶ 1, 3-4.)  Plaintiff sought, first, a variance from the City's zoning ordinance reducing the required front set-back for its proposed billboard from the statutory set-back of 75 linear feet to 25 linear feet, a 50 feet reduction, and, second, a variance increasing the height limitation for the billboard from the statutory limit of 30 linear feet to 99 linear feet, a 69 feet increase. (DSMF at ¶ 2;

2

AO 72A
(Rev.8/82)

Record Before the City Council of Variance Request ("Record") [48] at 5.)

The City Council considered plaintiff's application at a publicly noticed variance evidentiary hearing held October 28, 2004. (DSMF at ¶ 6.)   There, all parties, including the public, were afforded full opportunity to present evidence of record in support of or against plaintiff's variance requests. (Pl.'s Resp. to Defs.' Statement of Facts Not in Dispute ("Resp. DSMF") [57] at ¶ 8.)   The minutes of that October 28th hearing are a part of the administrative record. (*See* Record at 97-114.)

Among other things, plaintiff's application for variances included a redacted copy of its ground lease for the parcel in question. (*Id.* at ¶ 10.)   Though fully executed, the lease at issue does not list a commencement or expiration date.   Instead, the lease states that, "Lessor and Lessee agree to enter into an agreement setting forth the exact date of the Commencement Date and Expiration." (Record at 47.)   The lease further provides that rental payments are not to commence until construction of the billboard is complete. (*Id.* at 48.)   Plaintiff also submitted evidence of the Council's previous re-zoning of the property to allow for three billboards. (Resp. DSMF at ¶ 14.)   In addition, plaintiff's application included four photographs of its proposed billboard site, with views taken from the east and west. (DSMF at ¶ 16; Resp. DSMF at

3

¶ 16.)  The "East Approx. Location" photograph shows thick trees all along the right side of the freeway with a Department of Transportation ("DOT") sign visible just on the shoulder of the freeway. (Record at 68.)  The "East DOT Row View" photograph shows the trees to be set back slightly from the road and a "For Sale" sign, in the trees to be visible from the road. (*Id.* at 69.)  The two "Looking West" views show thick trees all along the left side of the freeway. (*Id* at 70-71.)

A full copy of the City's sign ordinance was not made a part of the record of the variance hearing. (DSMF at ¶ 18.)  Instead, plaintiff submitted only the two most applicable sections of the ordinance: § 3.73 discussing signs in general and billboards in particular and § 6.03 discussing variances.[1] (*See* Record at 43-45.)

---

[1]   Relevant portions of the ordinance made a part of the administrative record provide the following:

§ 3.73(g) *Billboards*.  In lieu of all freestanding signs authorized by subsection (1), any such property located within 500 feet of Interstate Highway 20 may contain one billboard which complies with the following . . .

(2) All portions of the face and support members of any billboard shall be setback from all buildings, structures, and property lines at least 75 feet . . .

(10) Height. Billboards shall not exceed 30 feet in height. Two billboards in the same location, back-to-back or in a 'V' formation shall be the same height above the interstate surface.

§ 6.03.01. *Initiation*.

The impetus behind plaintiff's request for height and setback variances is summed up in the affidavit of Robert D. Spratlin, submitted as part of plaintiff's application. (*See id.* at 59.) According to Mr. Spratlin, "[p]lacement of billboard signage and utilization of the billboard location on the property of which my company holds ground lease rights is impossible under the

---

b. In no case, however, shall a variance be granted for any of the following . . . [t]o allow a sign higher than 100 feet.

§ 6.03.02. *Standards for approval of a variance.*
a. *Signs.*   Variances from the sign regulations of this zoning ordinance shall be limited to the following hardship situations . . .

(2) Where visibility of a conforming sign from the public street and within 50 feet of the proposed sign would be substantially impaired by existing trees, plants, natural features, signs, buildings or structures on a different lot; and

i.   Placement of the sign elsewhere on the lot would not remedy the visual obstruction; and

ii.   Such visibility obstruction was not created by the owner of the subject property; and

ii. The variance proposed would not create a safety hazard to the traffic.

Variances shall be limited to the minimum relief necessary to overcome the hardship.   No variance shall be granted to allow a grater numbers of signs than would be allowed if the hardship did not exist.

(Record at 43-45.)

5

restrictions contained in the City of Douglasville's zoning ordinance." (*Id.* at 59 at ¶ 6.)  This is so because, "[v]isibility of a conforming sign from the public street and within 50 feet of the proposed sign is completely impaired by existing trees, vegetation and natural features on the adjacent property owned by Georgia [DOT] along Interstate 20." (*Id.* at 59 at ¶ 7.)  Mr. Spratlin based his conclusions on the topography of the land and measurements that showed the trees on the DOT right of way to be between 80 and 100 feet high. (*Id.* at 59 at ¶¶ 7-8.)

With regard to the safety of a billboard with the proposed variances, plaintiff submitted the affidavit of Larry Herman, president of Paragon Specialty Products and provider of the design and structure for plaintiff's various signage. (*See* Record at 63-64.) According to Mr. Herman's affidavit, plaintiff's proposed sign did not pose a "traffic safety hazard," as Paragon Speciality Products uses a structural engineer to design its billboard structures consistent with the 2000 IBC 90 mph wind load, and purchases materials for use in construction that are consistent with the requirements of the engineer's design. (*Id.* at 63-63 at ¶¶ 7-9.) Should its request be denied, an *ante litem* notice dated October 28, 2004, was also submitted by plaintiff as part of its application. (Record at 77.)

In response to plaintiff's request, during the October 28, 2004

6

meeting, the Chairman of the Planning and Zoning Committee, City Councilman Michael Carter, asked that someone check with the DOT regarding whether future plans to widen I-20 and install HOV lanes would affect the right of way in front of the proposed billboard. (*Id.* at 107-08.)   Councilman Carter wanted to insure that the City Council was not considering approving a sign whose placement would require the state to buy it back in the near future. (*Id.* at 108.) Counsel for plaintiff answered Councilman Carter's inquiry by stating that the DOT's proposed expansion plans would not affect the proposed billboard. (*Id.*)   On October 29, 2004, counsel for plaintiff also sent a follow up e-mail indicating that counsel had revisited the DOT's ARC website to confirm that the widening of I-20 would not encroach upon the proposed sign location. (*Id.* at 79.)

Ultimately, on November 1, 2004, during its regularly scheduled meeting, the City Council voted to deny plaintiff's request for variances. (Record at 118-21.)   The minutes of that November 1st hearing are a part of the administrative record. (*See id.* at 116-22.) In sum, the City Council denied plaintiff's request on the grounds that: (1) the variance posed a safety hazard; (2) the billboard could possibly be placed elsewhere on the property; and (3) topography did not justify the variances. (Pl.'s Statement of Material Facts, etc. ("PSMF") [43] at ¶ 8.)   More specifically, in discussion leading up to the vote, the City Council indicated its concern over the safety

7

of the ratio between the sign height and its distance from the right of way. To wit, if a 99 feet high sign located 50 feet from the right of way fell, if would be 49 feet into the right of way posing a danger to the public both now and later, when the sign began to deteriorate. (Record at 118-19.) Based on the visibility of the "For Sale" sign in plaintiff's photograph, the City Council also expressed its doubt that the visual obstruction of the DOT trees required as much variance as plaintiff was requesting. (*Id.* at 119.)

As for the topography of the parcel in question, there was some discussion that, under the City's ordinance, low topography is never a factor in sign height in that sign height is to be measured from the higher of the ground on the property or the grade of the road. (*Id.* at 120.) The City Council's discussion in this regard referenced § 8.178.91 of the Zoning Code, a provision that was not made a part of the variance record. (*Id.*) Based on all this, Councilman Carter concluded, "[l]ooking at these pictures, the trees in that clearing are much shorter than the ones at the proposed sign location. And since the low topography doesn't matter, I think the billboard could go at that clearing either with no variances or with a substantially less variance. In any event, the applicant hasn't proved that this particular location will not work." (*Id.*) The Councilman then went on to say that, "[b]ased on safety concerns and based on the applicant's failure to show that the alternate sign

8

placement on the lot would not remedy the visual obstruction entirely or at least minimize the variances required, I would like to make a motion to deny [plaintiff's request]." (*Id.* at 121.)   The instant lawsuit followed.

## DISCUSSION

### I.   Individuals Sued in their Official Capacity

Plaintiff has sued Mickey Thompson, Charles J. Banks, Jay Michael Carter, Beth Johnson, Roy E. Mims, Henry Mitchell, III, Winton H. Moreland, and Rochelle Robinson in their official capacities only.  (Compl. [1] ("Compl.") at 1.)  At the same time, plaintiff has asserted claims against the City of Douglasville directly.  (*Id.*)

With regard to the federal constitutional claims brought by plaintiff under 42 U.S.C § 1983, the United States Supreme Court has noted that official capacity suits, "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978));  *see also Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents.").  "Because suits against a municipal officer sued in his official capacity and direct suits

against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Here, plaintiff has essentially named the same defendant multiple times. Accordingly, all federal constitutional claims brought under Section 1983 against defendants Mickey Thompson, Charles J. Banks, Jay Michael Carter, Beth Johnson, Roy E. Mims, Henry Mitchell, III, Winton H. Moreland, and Rochelle Robinson are **DISMISSED.**

## II.   Motions Made to Correct Errors Made in Electronic Filing

Both Motion to Strike Attachments 5 and 7 of Document Number 48 and Documents 49 and 50 [52], filed by defendants, and Title Correction and Supplemental Filing [58], filed by plaintiff, are motions made to correct errors made by counsel in electronically filing their various other motions and supporting exhibits. The Court accepts both parties' corrections, and **GRANTS** Motion to Strike Attachments 5 and 7 of Document Number 48 and Documents 49 and 50 [52] as well as Title Correction and Supplemental Filing [58].

## III. Motions to Strike

Both plaintiff and defendants have moved to strike certain affidavits submitted by the opposing party. In Plaintiff's Motion to Strike [56] ("Pl.'s Strike"), plaintiff asks the Court to strike the

10

affidavits of Jeff D. Timler, Todd McCallister, and Suzan G. Littlefield. In Motion to Strike Affidavit of Robert D. Spratlin and Affidavit of Ryan M. Pott [64], defendants ask the Court to strike the affidavits of Robert D. Spratlin and Ryan M. Pott.

Plaintiff and defendants have both classified their objections to the affidavits at issue as motions to strike, presumably under Rule 12(f) of the Federal Rules of Civil Procedure. A Rule 12(f) motion to strike applies only to matters within the pleadings, however. As none of the challenged affidavits were submitted in connection with a "pleading," Rule 12(f) does not apply. *See* FED. R. CIV. P. 7(a). "The parties should have filed a notice of objection to the challenged testimony, not a motion to strike." *See Jordan v. Cobb County, Georgia,* 227 F. Supp. 2d 1322, 1346 (N.D. Ga. 2001)(Carnes, J.). Nevertheless, in the interests of efficiency, the Court will overlook this procedural error and proceed to assess the admissibility of the challenged affidavits.

### A.   Plaintiff's Motion to Strike

#### 1.   Affidavit of Jeff D. Timler

Plaintiff argues that the affidavit of Jeff D. Timler is irrelevant, overly prejudicial, and an improper attempt to supplement the record of defendants' denial of plaintiff's request for a variance currently on appeal to this Court. (Pl.'s Strike at 1-2.) Defendants counter that Mr. Timler's affidavit is not offered in

11

opposition to plaintiff's appeal of the decision to deny plaintiff's request for a variance but, instead, in opposition to the constitutional claims submitted by plaintiff.

In Georgia, when reviewing a local zoning authority's decision on a variance request, the Court considering the appeal is "bound by the facts presented to the local governing body or administrative agency . . ." *Emory Univ. v. Levitas*, 260 Ga. 894, 898, 401 S.E.2d 691, 695 (1991). However, this limitation on what the Court may properly consider on an appeal of a variance decision does not necessarily extend to the constitutional challenges raised by plaintiff. Accordingly, while it would be improper for the Court to consider any additional affidavit not already a part of the administrative record in its review of the City Council's decision to deny plaintiff's request for a variance, the Court may properly consider additional affidavits in its *de novo* review of the federal and state constitutional claims raised by plaintiff. Yet, even though the Court could consider an additional affidavit, it still sustains plaintiff's objection to the Timler affidavit.

Mr. Timler is the Director of the Planning Department of the City of Snellville. As such, Mr. Timler had no part in the City Council's decision to deny plaintiff's request for a variance. Defendants admit as much. Still, defendants maintain that Mr. Timler's personal knowledge of a major billboard collapse in

12

Snellville is relevant in that such knowledge establishes that the City Council's concerns over billboard safety were not "phantom concerns." (Defs.' Resp. to Pl.'s Mot. to Strike ("Defs.' Resp. Strike") [60] at 3.)

First, the reasonableness of the safety concerns articulated by the City Council as a partial explanation for its denial of plaintiff's request is a matter for the Court to consider in its review of plaintiff's variance appeal. On this issue the Court is bound to the record that was before the council. Moreover, what a planning department official from an unrelated, entirely separate city may or may not have known has no bearing on whether or not there has been a violation of the state or federal constitution. Mr. Timler's affidavit is irrelevant, and, thus, under Rule 402 of the Federal Rules of Evidence, not admissible. The Court therefore **GRANTS** Plaintiff's Motion to Strike [56] the affidavit of Jeff D. Timler.

### 2.    **Affidavit of Todd McCallister**

Plaintiff next argues that the affidavit of Todd McCallister is irrelevant and that the introduction of this affidavit constitutes an improper attempt to supplement the record of defendants' denial of plaintiff's request for a variance currently on appeal to this Court. (Pl.'s Strike at 2.) Defendants counter that McCallister's affidavit is offered only in opposition to plaintiff's constitutional claims,

13

in order to refute plaintiff's allegations that the City has a pattern and practice of purposefully blocking billboards from the City. (Defs.' Resp. Strike at 3-4.)   Mr. McCallister is the Code Enforcement Officer for the City of Douglasville.  Mr. McCallister's affidavit contains statements about his personal knowledge of the number, kind, and placement of billboards in the City.   The Court concludes that this information is relevant, and properly offered in opposition to plaintiff's constitutional claims.   Therefore, as to the affidavit of Todd McCallister, the Court **DENIES** Plaintiff's Motion to Strike [56].

### 3.   Affidavit of Suzan G. Littlefield

Finally, plaintiff argues that the affidavit of Suzan G. Littlefield constitutes an improper attempt to supplement the record of defendants' denial of plaintiff's request for a variance currently on appeal to this Court. (Pl.'s Strike at 2.)   Again, defendants respond that Littlefield's affidavit is offered only in opposition to plaintiff's constitutional claims. (Defs.' Resp. Strike at 4.)   The Court concludes that, with the exception of paragraph 14, Ms. Littlefield's affidavit is properly offered in opposition to plaintiff's constitutional claims.

Paragraph 14 consists of a statement by Ms. Littlefield as to what the City Council is familiar with, for this statement Ms. Littlefield lacks the necessary personal knowledge.   On summary

14

judgment, the Court does not accept testimony that is not based on personal knowledge. *See Citizens Concerned About Our Children v. School Bd. of Broward Cty., Fla.*, 193 F.3d 1285, 1295 n.11 (11th Cir. 1999). Accordingly, as to paragraph 14 of the affidavit of Suzan G. Littlefield, the Court **GRANTS** Plaintiff's Motion to Strike [56]. The Court **DENIES** Plaintiff's Motion to Strike [56] the remainder of Ms. Littlefield's affidavit.

### B.   Defendants' Motion to Strike

#### 1.   Affidavit of Robert D. Spratlin

Like plaintiff before them, defendants argue that the affidavit of Robert D. Spratlin constitutes an improper attempt to supplement the record of defendants' denial of plaintiff's request for a variance currently on appeal to this Court. (Mem. of Law in Supp. of Defs.' Mot. to Strike Aff. of Robert D. Spratlin and Aff. of Ryan M. Pott ("Defs.' Strike") [64] at 4.) Plaintiff counters that Mr. Spratlin's affidavit is offered not for the variance appeal, but only in support of plaintiff's constitutional claims to counter defendants' allegations that plaintiff has no property rights on which to found its claims. (Pl.'s Resp. to Defs.' Mot. to Strike ("Pl.'s Resp. Strike") [63] at 2.) While the Court will, of course, not consider Mr. Spratlin's affidavit as part of the record on appeal

15

of the City Council's variance decision,[2] the Court concludes that Mr. Spratlin's affidavit may properly be considered on all constitutional claims presently before the Court.   Thus, as to the affidavit of Robert D. Spratlin, the Court **DENIES** Motion to Strike Affidavit of Robert D. Spratlin and Affidavit of Ryan M. Pott [64].

### C.   Affidavit of Ryan M. Pott

Defendants ask the Court to strike the affidavit of Ryan M. Pott for several reasons.   First, defendants argue that Mr. Pott's affidavit constitutes an improper attempt to supplement the record of defendants' denial of plaintiff's request for a variance currently on appeal to this Court. (Defs.' Strike at 1.)   Defendants further object to Mr. Pott's affidavit on the grounds that Mr. Pott, as counsel for plaintiff, cannot also be a witness in this case.   In addition, defendants object to the copy of the City's ordinance attached to Mr. Pott's affidavit as not properly identified or authenticated, and, therefore, inadmissible. (*Id.*)

Plaintiff responds by indicating that it offers Mr. Pott's affidavit only in support of its constitutional claims. (Pl.'s Resp. Strike at 2.)   As to the ordinance, plaintiff argues that the

---

[2]   The Court will consider the affidavit of Mr. Spratlin that plaintiff submitted as part of its application for variances.   This affidavit can be found on p. 59 of the Record of the City Council's consideration of plaintiff's request for variances.   The affidavit that defendants have moved to strike is a separate affidavit of Mr. Spratlin filed with this Court on September 12, 2005.

ordinance sections at issue were acknowledged by defendants in discovery. In support of its position, plaintiff attaches to its response a copy of the statute that was produced by defendants during discovery. Finally, plaintiff argues that under Rule 3.7 of the Georgia Rules of Professional Conduct Mr. Pott, even as an advocate, may properly testify to uncontested issues in a case. (*Id.* at 4.) Here, he has testified as to what defendants served in discovery.

Yet, the ordinance attached to Mr. Pott's affidavit in no way resembles the copy of the statute produced by defendants that plaintiff has attached to its response to defendants' motion to strike Mr. Pott's affidavit. The uncertified copy of a City of Douglasville ordinance attached to Mr. Pott's affidavit indicates on its cover that it is from Municipal Code Corporation and was reprinted in 2001. In contrast, the copy of the statute produced by defendants includes a certification from the City Clerk of the City that the attached is a true and correct copy of "Appendix A - Zoning" and was reprinted in November 2004. (*See* Pl.'s Resp. Strike at Exs. B-C.)

To avoid wasting the Court's time and eyes with a line-by-line comparison of the 2001 and 2004 reprints, the Court will credit and refer to the authenticated copy of the ordinance certified by the City Clerk over a non-certified copy of the ordinance produced by

17

plaintiff's counsel. Indeed, though it does not decide the issue, the Court questions whether plaintiff's counsel has the requisite personal knowledge to competently authenticate the City's ordinance. However, the Court will only consider the complete ordinance in its review of plaintiff's constitutional claims.   In considering plaintiff's variance appeal, the Court is bound to the record that was before the City Council and, thus, the Court considers only those provisions of the ordinance that were actually made a part of the record: § 3.73, discussing signs in general and billboards in particular, and § 6.03, discussing variances.  *See* discussion *supra* at 4.  Consistent with the above, as to the ordinance attached as Ex. A to  the affidavit of Ryan M. Pott and paragraph 6 which references the attachment, the Court **GRANTS** Motion to Strike Affidavit of Robert D. Spratlin and Affidavit of Ryan M. Pott [64].  The Court concludes that, on all but the variance appeal, it may properly consider the remainder of Mr. Pott's affidavit including Ex. B: a copy of a second *ante litem* notice Mr. Pott's sent to defendants.  The Court thus **DENIES** Motion to Strike Affidavit of Robert D. Spratlin and Affidavit of Ryan M. Pott [64] as to the remainder of Mr. Pott's affidavit.

**IV.   Motions for Summary Judgment**

Defendants in this action have moved for summary judgment against all claims brought by plaintiff, or, alternatively, for summary judgment on any of the following: plaintiff's appeal of the

18

City Council's variance denial; each of the enumerated constitutional claims brought by plaintiff; plaintiff's claims for damages under federal law; and, finally, plaintiff's claims for damages under state law. (Douglasville Defs. Mot. for Summ. J. [48] at 2-3.)  Plaintiff in turn has moved for partial summary judgment on its appeal of defendants' denial of plaintiff's request for a variance from the City's billboard height and setback restrictions. (Pl.'s Mot. for Partial Summ. J. at 1-2.)

### A.   Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an

19

essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion.  *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required to negate his opponent's claim, however.  The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[3] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).  While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[3] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

A fact is material when it is identified as such by the control-ling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

**B. Defendants' Motion for Summary Judgment**

Defendants in this action seek summary judgment on plaintiff's appeal of the City Council's variance denial; each of the enumerated constitutional claims brought by plaintiff; plaintiff's claims for damages under federal law; and, finally, plaintiff's claims for damages under state law.

21

### 1.   Appeal of the City Council's Denial of Plaintiff's Request for a Variance

In general, land use planning is a matter of local concern. *Fields v. Rockdale County*, 785 F.2d 1558, 1561 (11th Cir. 1986)(internal citation omitted).   Consequently, if there is <u>any</u> evidence to support a local administrative agency or local governing body's grant or denial of a variance the Court must affirm the decision. *Emory Univ. v. Levitas*, 260 Ga. 894, 897-98, 401 S.E.2d 691, 694-95 (1991).   Importantly, when reviewing such a decision the Court "is bound by the facts presented to the local administrative agency or local governing body." *Id.* at 897 n.2, 694 n.2 (internal citation omitted).

Bound by the record that was before the local administrative agency or local governing body, in this case the Douglasville City Council, the Court's function is "to determine (1) whether there was any evidence to support the findings of the [City Council] and (2) whether the [City Council] abused its discretion." *City of Atlanta Bd. of Zoning Adjustment v. Kelly*, 238 Ga. App. 799, 801, 520 S.E.2d 269, 271 (1999).   In other words, "[t]he duty of this Court on appeal is to decide whether the record supports the initial decision of the administrative agency." *AT&T Wireless PCS, Inc. v. Leafmore Forest Condo. Ass'n of Owners*, 235 Ga. App. 319, 323, 509 S.E.2d 374, 378 (1998).   To do this, the Court must decide whether the City Council:

22

"(1) acted beyond the scope of its discretionary powers; (2) abused its discretion; (3) or acted in an arbitrary and capricious manner." *RCG Properties, LLC v. City of Atlanta Bd. of Zoning Adjustment*, 260 Ga. App. 355, 363, 599 S.E.2d 782, 788 (2003). On appeal of the variance decision, plaintiff bears the burden of showing that the City Council exceeded its authority, abused its discretion, or acted in an arbitrary or capricious manner. *Matheson v. DeKalb County*, 257 Ga. 48, 50, 345 S.E.2d 121, 124 (1987). "Federal review of zoning decisions under the arbitrary and capricious standard is extremely narrow." *Nasser v. The City of Homewood*, 671 F.2d 432, 441 (11th Cir. 1982).

In support of its decision to deny plaintiff's request for variances, defendants assert first that, pursuant to § 8.178.91 of the City's zoning ordinance, plaintiff incorrectly measured the height of the trees at issue from where those trees emerged from the surrounding ground rather than from the higher of the ground on the property or the grade of the road. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Summ. J.") [48] at 6-7; Record at 120.) Defendants further argue that the City Council's conclusion that the photographs provided by plaintiff showed alternative locations for plaintiff's billboard that could have been visible with less extreme variances was entirely reasonable. (Defs.' Summ. J. at 7-8.) Additionally, defendants insist that the record shows that safety

23

concerns associated with the proposed variances were not properly addressed by plaintiff. (*Id.* at 8.)   More specifically, defendants argue that Mr. Spratlin's affidavit makes only conclusory statements about the safety of the proposed billboard without addressing the design defects, manufacturing defects, or installation problems that justifiably caused the City Council to question the credibility of Mr. Spratlin as a witness. (*Id.* at 9.)

Defendants maintain that, in the face of what the Council believed to be viable alternative locations for the billboard on the property in question, it was neither arbitrary nor capricious for the Council to deny plaintiff's request to increase the allowable height of a billboard threefold and decrease the required setback by two-thirds, which would have effectively gutted the City's regulatory scheme. (*Id.* at 12-13.)   In sum, defendants insist that their decision should be affirmed in that they conducted a fair hearing and made a reasoned decision based on the evidence of record. (*Id.* at 8, 12.)

Agreeing that the appeal of a variance denial is restricted to the record that was before the administrative agency,   plaintiff counters defendants' motion for summary judgment by arguing that, consistent with § 6.03.02 of the City's ordinance,  it put ample evidence before the City Council to justify its requested variances in that: visibility of the proposed billboard would be substantially

24

impaired by existing trees and plants present on a neighboring lot; placement of the sign elsewhere on the property would not remedy the obstruction; the obstruction and natural features were not created by plaintiff; and the proposed variance would not create a safety hazard to traffic. (Pl.'s Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. ("Resp. Defs.'") [57] at 7.)  Plaintiff further argues that the City Council's decision should be overruled because defendants failed to present any evidence at the evidentiary hearing to refute plaintiff's "entitlement" to the requested variances. (*Id.* at 8.)  Finally, plaintiff argues that defendants' indication in its November 1st denial of plaintiff's request that topography could not be considered in making a variance decision was in error because the language of § 6.03.02 does not exclude topography as a natural feature. (*Id.* at 8-9.)

First, with regard to the City Council's use and application of § 8.178.91, this particular provision of the ordinance was not a part of the administrative record that the Court may consider and the Court cannot take judicial notice of a county ordinance.  The Court therefore must assume that the City Council's use and application of this provision was correct and reasonable. *Clark v. State*, 240 Ga. App. 303, 303, 523 S.E.2d 388, 388 (1999).  Second, and more importantly, having thoroughly reviewed the administrative record, the Court concludes that there is ample evidence to support the

25

Council's decision to deny plaintiff's request for substantial variances from both height and setback provisions. Though plaintiff insists otherwise, it was not the job of the City Council to present evidence at the hearing to refute plaintiff's "entitlement" to the requested variances. Instead, the burden was on plaintiff to show the need for a variance. *Int'l Funeral Servs. Inc. v. DeKalb County,* 244 Ga. 707, 709-10, 261 S.E.2d 625, 710 (1979), *overruled on other grounds by Jackson v. Spalding County,* 265 Ga. 792, 793, 462 S.E.2d 361, 363 (1995). Further, the Court finds no evidence that the Council abused its discretion. To the contrary, a reading of both the October 28th and November 1st City Council meetings show that the Council held a publicly noticed evidentiary hearing, considered the evidence offered by plaintiff in light of the City's restrictions on billboard placement, and, having done so, concluded that plaintiff's request should be denied.

Plaintiff in this action requested a variance allowing him to drastically depart from the City's billboard restrictions; indeed, plaintiff's request for a 99 feet high sign constituted a request for a sign just one foot lower than the absolute maximum the City Council would ever consider.[4] In support of this request plaintiff submitted

---

[4] *See* § 6.03.01 of the City's zoning ordinance, "In no case, however, shall a variance be granted . . . [t]o allow a sign higher than 100 feet."

26

photographs of the site which show a "For Sale" sign much lower than 99 feet to be clearly visible from the freeway.   Plaintiff now contends that this "For Sale" sign is on the DOT right of way to which plaintiff clearly could not place its billboard. (Resp. Defs.' at 12.)

Regardless of whether or not this is true, the visibility of the "For Sale" sign in the very trees which plaintiff claimed necessitated the requested variances supports the reasonableness of the City Council's conclusion that the visual obstruction caused by the DOT trees did not call for any or as much of a height or setback variance as plaintiff was requesting, and that the billboard could feasibly be placed elsewhere on the property.  Indeed, the "East DOT Row View" photograph in which the "For Sale" sign is visible shows the trees at issue to be set back from the road and shows breaks in the trees to be such that it was entirely reasonable for the City Council to conclude that a sign less than 99 feet high with more than a 25 feet setback could be positioned so as to be visible from the freeway.

Having concluded as a matter of law that the "East DOT Row View" photograph supports the City Council's denial of plaintiff's request for variances,  the Court has no cause to consider whether the Council's safety concerns and the topography issue further bolster the Council's decision.   The Court's task on appeal is to determine

27

if there is any evidence to support the Council's denial.   Mindful

that its review is to be "extremely narrow," the Court has found some

evidence to support the Council's decision as reasonable, within its

discretionary powers, and not arbitrary or capricious.   Accordingly,

the Court's inquiry is complete.

Having viewed all evidence in the light most favorable to

plaintiff, the Court concludes that the administrative record

supports the decision of the Douglasville City Council to deny

plaintiff's request for variances.   Accordingly, as to the variance

appeal, the Court **GRANTS** Douglasville Defendants' Motion for Summary

Judgment [48].

## 2.   Waiver of Constitutional Claims

Defendants maintain that plaintiff failed to raise any of its

constitutional claims with the City Council.   Defendants argue that

this failure on the part of plaintiff to provide the City Council

with adequate notice of any of its constitutional claims constitutes

a waiver of any such claims. (Defs.' Summ. J. at 4.)

The rule in Georgia is that, as a precursor to bringing a

constitutional attack on a zoning ordinance in the courts, a litigant

must first raise all of its constitutional issues before the

appropriate administrative board. *Shockley v. Fayette County*, 260 Ga.

489, 490-91, 396 S.E.2d 883, 884 (1990).   While the administrative

board, in this case the City Council, lacks the authority to

28

determine whether or not its ordinance is constitutional, by receiving notice of the constitutional objections, the board is afforded "the opportunity to grant the variance and thereby remedy any such constitutional deficiency in the ordinance as applied to the landowner's property." *Id.* However, importantly, "notice to a zoning authority concerning the constitutionality of an existing zoning classification does not have to meet a high standard of particularity. All that is required is that the zoning authority be given 'fair notice that a constitutional challenge is being raised.'" *Ashkouti v. City of Suwanee*, 271 Ga. 154, 155, 516 S.E.2d 785, 786 (1999).

During the October 28, 2004 evidentiary hearing, plaintiff's counsel testified, "[a]nd certainly, Mr. Mayor and Council members, we've had (*sic.*) for procedural purposes enclosed our constitutional challenge and *ante litem* notice certainly not as a threat in any manner but as a procedural requirement only." (Record 10.)   The letter referenced by plaintiff's counsel, dated October 28, 2004, states:

> [p]lease accept this correspondence as our notice of constitutional challenge to any denial of these variances . . . The Zoning and Planning Ordinance of the City of Douglasville is unconstitutional as applied to the property in that said ordinance deprives Spratlin and property owner of its property under and pursuant to art. 1, § 1, ¶¶ 1 and 2 of the Georgia Constitution of 1983, and the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United

29

States of America.   This deprivation of property without
due process violates the constitutional prohibition against
the taking of private property without just compensation .
. . Additionally, applicant has reserved his rights to
enforce his position as to the City failures and
improprieties during the planning and zoning application
phase of the variance request.   Specifically, City of
Douglasville erred in failing to follow proper procedure in
the variance application process, resulting in detriment
and injury to the applicant.

(Record at 74.)

Taking the statements made by plaintiff's counsel during the

October 28th hearing and the content of the above letter together,

the Court concludes that plaintiff provided the City Council with

adequate notice of its potential constitutional claims.  Accordingly,

plaintiff's constitutional claims have not been waived.

Having determined that defendants are not entitled to summary

judgment on plaintiff's constitutional claims under a waiver theory,

the Court will proceed to consider whether defendants are entitled to

summary judgment under any of defendants' alternative theories.   "We

do so with a proviso that zoning decisions, as a general rule, will

not usually be found by a federal court to implicate constitutional

guarantees and with a disinclination to sit as a zoning board of

review." *Greenbriar Village, LLC v. Mountain Brook City*, 345 F.3d

1258, 1262 (11th Cir. 2003).

30

**3.    Defendants' Motion for Summary Judgment on Plaintiff's Constitutional Claims**

Plaintiff argues that the City Council's refusal to grant plaintiff the variances it requested have violated plaintiff's rights under the Due Process Clause and the Equal Protection Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, and analogous Georgia constitutional provisions. (Compl. at ¶¶ 29, 42, 46, 47, 51, 56, 58, 64.)  Plaintiff also asserts that his rights under the Commerce Clause found in Article I, Section 8 of the Constitution of the United States have been violated. (*Id.* at ¶¶ 63-64.)

**a.    Due Process**

First, although their brief indicates that defendants appear to have thought that plaintiff asserted a Due Process claim, plaintiff notes that it "has not averred that it has been deprived of procedural due process." (Resp. Defs.' at 17.)  Thus, the Court need only consider whether defendants are entitled to summary judgment on plaintiff's claim for violations of its <u>substantive</u> due process rights.  On this issue, plaintiff has failed to state a valid claim.

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are implicit in the concept of ordered liberty." *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994)(internal quotation and citation omitted).

31

However, "areas in which substantive rights are created only by state law are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution." *Lewis v. Brown*, 409 F.3d 1271, 1272-73 (11th Cir. 2005). Importantly, in this circuit, "[t]he list of state-created rights . . . includes land-use rights like the zoning restrictions at issue here." *Id.* at 1273 (internal citation omitted).

This is because property interests are not created by the Constitution, but, instead, "by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, because plaintiff predicates its substantive due process claim directly on the City Council's denial of its state-granted and state-defined property right in the variance, a substantive due process claim is not available. *Greenbriar Village, LLC,* 345 F.3d at 1262 (finding no substantive due process claim in municipality's revocation of a land disturbance permit). The only possible exception to this general rule would be if plaintiff's state-created right in the variance was infringed by "legislative act." *Lewis*, 409 F.3d at 1273. Were this the case, "the substantive component of the Due Process Clause generally protects . . . from arbitrary and irrational action by the government." *Id.* On this exception, however, the legislative nature of the act is key as, "non-

32

legislative or executive deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally.   Constitutional due process is satisfied for these deprivations when proper procedures are employed." *Id.*

In this case, the City Council's decision to deny plaintiff's request for variances from the billboard height and setback restrictions affected only a limited class of persons, namely, plaintiff.  For purposes of a party's substantive due process rights under the federal Constitution, this kind of zoning decision, an enforcement of existing zoning regulations, is an executive act. This is true regardless of what the Georgia courts say. *Id.* at 1274 ("it is the duty of federal courts to independently determine whether a government act is executive or legislative for the purposes of applying substantive due process principles . . . for the purposes of substantive due process analysis . . . enforcement of existing zoning regulations is an executive, not legislative act.").

In sum, the facts of this case do not implicate the legislative act exception from the general rule that substantive rights created by state law are not subject to substantive due process protection. *See id.*  Plaintiff has conceded that its procedural due process rights were not violated and no substantive due process claim is

33

available.    The Court therefore **GRANTS** Douglasville Defendants'
Motion for Summary Judgment [48] as to all federal Due Process Clause
claims.

As for plaintiff's claims of due process violations under the
Georgia constitution, plaintiff has cited to no authority nor argued
that the standards for finding a substantive due process violation
under Georgia's constitution are any different from those under the
federal constitution.   Accordingly, as it did for the federal claims,
the Court **GRANTS** Douglasville Defendants' Motion for Summary Judgment
[48] as to all of plaintiff's state substantive due process claims.[5]

### b.    Equal Protection

Defendants have moved for summary judgment on plaintiff's claims
for violations of his rights under the Equal Protection Clause of the
Fourteenth Amendment.    Citing the deposition testimony of City
attorney Susan Littlefield, plaintiff's only response is,  "[a]s to
Equal Protection, Defendants by their own admission have granted

---

[5]  Neither party has attempted to assist the Court in an analysis
of the reach of the Georgia Due Process Clause and Equal Protection
Clause.    It appears from the Court's own research however, that in
some instances, Georgia's due process clause does afford more
protection than its federal equivalent.   For example, the "right to
be let alone," guaranteed by Georgia's due process clause is
purportedly "far more extensive that (*sic.*) the right of privacy
protected by the U.S. Constitution." *Powell v. State*, 270 Ga. 327,
330, 510 S.E.2d 18, 22 (1998).    There is no evidence of such
additional state protection applicable to the facts presented in the
instant case, however.

AO 72A
(Rev.8/82)

variances to substantially similar locations and billboard companies
. . ." (Resp. DSMF at 21.)

First, this statement is not a fair characterization of Ms.
Littlefield's testimony.  All that Ms. Littlefield testified to is
that the City at one time granted one height and two setback
variances to another billboard company: hardly an admission that
variances have been granted for "substantially similar locations and
billboard companies." (Dep. of Susan Littlefield, attach. to Resp.
Defs.' ("Littlefield Dep.") at 49.)   To the contrary, Ms.
Littlefield's recollection of a height variance for something under
69 feet being granted is hardly "substantially similar" to
plaintiff's request for a 99 feet high sign. (See id. at 50.)

"The Equal Protection Clause requires that the government treat
similarly situated individuals in a like manner." Lamar Advertising
Co. v. City of Douglasville, 254 F. Supp. 2d 1321, 1338 (N.D. Ga.
2003)(Martin, J.).   "'If an ordinance does not infringe upon a
fundamental right or target a protected class, equal protection
claims relating to it are judged under the rational basis test;
specifically, the ordinance must be rationally related to the
achievement of a legitimate government purpose.'" Id. (citing Joel v.
City of Orlando, 232 F.3d 1353, 1357 (11th Cir. 2000)).

In this case, plaintiff does not allege that it is a member of
a suspect class.  Moreover, there is no fundamental right to erect

35

billboards or any other category of sign structure. *Lamar Advertising Co.*, 254 F. Supp. 2d at 1339.   This is not a situation where plaintiff is attempting to assert its right to engage in a specific type of speech.   Instead, plaintiff is attempting to assert what plaintiff believes is its right to erect a billboard that violates the height and setback limitations set by the zoning ordinance, so that the plaintiff can then sell advertising space on that billboard. Consequently, the City's zoning ordinance is properly analyzed under the rational basis test.   "The rational basis test requires that an ordinance be rationally related to the achievement of a legitimate government purpose." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1338-39 (11th Cir. 2002)(internal citation and quotation omitted). Under the rational basis test, the Court will not overturn a piece of legislation, "unless the varying treatment [] is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.* at 1339.

Under this highly deferential standard, the Court concludes that the City zoning ordinance's restrictions on billboard height (30 feet) and setback (75 feet) are rationally related to the City's stated purpose for enacting an ordinance to regulate the use of land and the location and use of building and other site improvements: namely, promoting the health, safety, moral and general welfare of

36

the public; promoting the orderly and beneficial development and expansion of the city; promoting adequate access to natural light and air; improving the aesthetic appearance of the city; and encouraging the most appropriate use of land and buildings in accordance with the city's comprehensive plan. (Defs.' Summ. J. at 18-20; § 1.03.01 of the Ordinance, attach to Pl.'s Resp. Strike as Ex. C.)  The City's restrictions keep billboards from being built too high and coming too close to buildings and structures: both of which are factors that clearly affect the overall aesthetics, access to natural light, and safety of the City.  In sum, there is a rational relationship between the City's purpose and the means adopted such that the billboard restrictions do not violate the Equal Protection Clause. Accordingly, the ordinance does not violate the Equal Protection Clause.  The Court **GRANTS** Douglasville Defendants' Motion for Summary Judgment [48] as to all federal Equal Protection Clause claims.

As for plaintiff's claims of equal protection violations under the Georgia constitution, "[b]ecause the protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. I, Sec. I, Par. II, of the Georgia Constitution of 1983, we apply them as one." *Nodvin v. State Bar of Georgia*, 273 Ga. 559, 559-60, 544 S.E.2d 142-45 (2001)(internal citations omitted).  Accordingly, the Court **GRANTS** Douglasville Defendants' Motion for Summary Judgment [48] as to all

37

state Equal Protection Clause claims.

The Court's conclusion is consistent with the Supreme Court's recognition of the fact that billboards "create a unique set of problems for land-use planning and development . . . the government has legitimate interests in controlling the noncommunicative aspects of the medium." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 502 (1981). To further and preserve the appearance of a City are substantial governmental goals. *See id.* at 507 (citing, among others, *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978)).

### c.    Commerce Clause

Plaintiff maintains that the City Council's refusal to issue the requested variances has deprived plaintiff of its interstate commerce rights under the Commerce Clause of Article I, Section 8. (Compl. at ¶ 64.) The height and setback restrictions at issue in this case, and the enforcement thereof, does not discriminate between interstate and intrastate commerce. For example, there is no City ordinance prohibiting out of state businesses from advertising on billboards in the City or lesser height and setback restrictions for purely intrastate commerce. Moreover, the Court has seen no evidence that, when denying plaintiff's request for variances, the City Council had any idea whether the billboard would be hosting advertisements for intrastate advertisers, interstate advertisers, or both. Plaintiff has not proposed any theory as to how interstate commerce is burdened

38

by the City's zoning ordinance; even had plaintiff done so, restricting the height and setback of billboards creates no more than an incidental burden on interstate commerce. That burden would be the loss of advertising space above 30 feet and within 75 linear feet of all buildings, structures, and property lines. Evidencing the fact that this burden, to intrastate as well as interstate advertisers, is extremely small is the fact that, even with the restrictions in place, there are currently at least seventy-seven billboards located within the City limits. (Aff. of Todd McAllister [48] at ¶ 3.)

Statutes that discriminate against interstate commerce have consistently been struck down, but here, "the statute does not discriminate between interstate and intrastate commerce, the controlling question [thus becomes] whether the incidental burden imposed on interstate commerce by the [height and setback restrictions] is 'clearly excessive in relation to the putative local benefits.'" *Minnesota v. Clover Leaf Creamery Co.* 449 U.S. 456, 472 (1981). The height and setback restrictions at issue in this case give the City better aesthetics, better access to natural light, and less risk of billboard collapse and subsequent injury. Weighing these considerable benefits against the minimal burden of losing billboard advertising space above 30 feet and within 75 linear feet of all buildings, structures, and property lines, it is clear that

the City's height and setback restrictions are not excessive. Accordingly, the Court **GRANTS** Douglasville Defendants' Motion for Summary Judgment [48] as to all federal Commerce Clause claims.

### 4. Miscellaneous Remaining Issues: Taking & *Ante Litem* Notice

Property may be regulated. Only when a regulation goes too far is a taking recognized. *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 613 (11th Cir. 1997). To find a "taking" under Art. I, Sec. III, Para. I of the Georgia Constitution there must be an "arbitrary confiscation of [] property without compensation by the governing authority." *Gradous v. Bd. of Comm'r of Richmond County*, 256 Ga. 469, 471, 349 S.E.2d 707, 710 (1986). In this case, the City Council's denial of plaintiff's request for a variance did not go "so far in diminishing the landowner's interests as to constitute a taking." *Villas of Lake Jackson*, 121 F.3d at 613. Simply put, the "constitutional right against excessive regulation does not encompass separate protection of individual strands in the bundle of property rights as landowners here have claimed." Where an owner possesses a full bundle of property rights, the destruction of one strand of the bundle is not a taking. *Id.* at 614. The denial of a request for a variance to which plaintiff had no entitlement is not a taking. The Court **GRANTS** Douglasville Defendants' Motion for Summary Judgment [48] as to all takings claims.

40

AO 72A
(Rev.8/82)

The Court has granted defendants' motion for summary judgment on all state law claims.  As a consequence, there will not be an award of damages for any of plaintiff's state law claims. The Court thus has no cause to consider whether or not plaintiff provided adequate ante litem notice as required by O.C.G.A. § 36-33-5 (2005).

**C.    Plaintiff's Motion for Partial Summary Judgment**

The Court has granted defendants' motion for summary judgment on the appeal of the City Council's variance decision. *See* discussion *supra* at 28.  In its motion for partial summary judgment plaintiff seeks summary judgment on the same issue.  Having granted defendants' motion, the Court necessarily **DENIES** Plaintiff's Motion for Partial Summary Judgment [43].  Consistent with the granting of defendants' motion on the variance appeal and the denial of plaintiff's motion on the same, plaintiff is not entitled to the issuance of a writ of mandamus ordering the City Council to grant the requested variances.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment [43]; **GRANTS** Douglasville Defendants' Motion for Summary Judgment [48]; **GRANTS** Motion to Strike Attachments 5 and 7 of Document Number 48 and Documents 49 and 50 [52]; **GRANTS in part and DENIES in part** Plaintiff's Motion to Strike [56]; **GRANTS** Title Correction and Supplemental Filing [58]; AND **GRANTS in part and**

41

**DENIES in part** Motion to Strike Affidavit of Robert D. Spratlin and

Affidavit of Ryan M. Pott [64].

SO ORDERED, this _27_ day of March, 2006.

_____

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)